Filed 10/21/13  Horspool v. Horspool CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| RAYMOND HORSPOOL, JR., as Successor Co-trustee, etc. et al., | |
| Plaintiffs and Respondents, | E051016 |
| v. | (Super.Ct.No. PROPS0600209) |
| WILLIAM F. HORSPOOL, | OPINION |
| Defendant and Appellant; | |
| BARBARA E. HOWARD, | |
| Claimant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  J. Michael Welch, Judge.  Affirmed in part; reversed in part.

Carter & Carter and Christopher C. Carter; Knickerbocker Law Group and Richard L. Knickerbocker for Claimant, Defendant, and Appellants.

Fullerton, Lemann, Schaefer & Dominick and Thomas W. Dominick for Plaintiffs and Respondents.

1

I.  INTRODUCTION

Raymond P. Horspool, Sr., was an original settlor and trustor of the Raymond P. Horspool and Margaret F. Horspool Family Trust (the Family Trust) dated September 5, 1996.  Defendant William J. Horspool, claimant Barbara E. Howard, and plaintiffs Raymond P. Horspool, Jr., and J. David Horspool, are Raymond, Sr.'s children; plaintiffs are successor co-trustees of the Family Trust.  In October 2011, we observed:  "The Horspool[1] family is well known to this court by virtue of numerous appeals and writ proceedings stemming from the inability of various family members to cooperate and agree in conservatorship proceedings involving the family patriarch, [Raymond, Sr.], and from various disputes over property issues.  (E.g., case Nos. E045688, E050097, E047160, E046041, E048232, E048539, E045688.)"  (*Horspool v. Horspool* (Oct. 6, 2011, E050166) [nonpub. opn.] at p. 2.)  Since that time, even more cases have come before us.  (E.g., case Nos. E051550, E053605.)

In this case, William[2] appeals from judgment for plaintiffs entered April 5, 2010,[3] on plaintiffs' petition under Probate Code section 850, subdivision (a)(3)(B), seeking a determination of their entitlement to possession and title to a residence on Barrett Road in

---

**1**  Because various parties share the same surname, we will refer to them herein by their first names for clarity and convenience, and not intending any disrespect.

**2**  William's wife, Kelly R. Horspool, also filed a notice of appeal in this matter.  However, on September 10, 2010, this court dismissed her appeal as abandoned.

**3**  Although William also appealed from an order granting plaintiffs' motion to tax costs, he raises no argument specific to that contention.  We therefore deem any such argument forfeited, and we will not further discuss the motion to tax costs.

Riverside (the property). Howard appeals from an order denying her motion to vacate a terminating sanctions order and orders denying her claim of right to possession of property.

William and Howard both contend the trial court lacked jurisdiction to issue terminating sanctions because (1) a remittitur had not yet issued with respect to William's appeal from an order compelling his deposition; (2) the trial court lacked jurisdiction to grant monetary damages because the petition did not specify an amount of monetary damages; (3) the trial court abused its discretion by denying the motion for change of venue; and (4) the trial court exceeded its jurisdiction by failing to act in compliance with judicial canons and with Code of Civil Procedure sections 170.1 and 170.6. William further contends (1) the trial court abused its discretion in imposing terminating sanctions because such a remedy was "drastic and excessive" under the circumstances, and (2) Raymond, Sr., retained all rights and powers of ownership over all trust property. Howard further contends (1) the trial court exceeded its jurisdiction in acting on her right of possession while an appeal from a prejudgment writ of possession was pending, and (2) the trial court failed to apply the standard of Code of Civil Procedure section 473, subdivision (d) when ruling on her motion to vacate the default order.

We agree that the trial court erred in imposing monetary damages because the petition did not request any specific amount of damages, and we will therefore vacate that portion of the judgment. We find no other error, and we will otherwise affirm the judgment and orders appealed from.

3

## II.  FACTS AND PROCEDURAL BACKGROUND[4]

### A.  Initiation of the Action

In December 2006, Raymond, Jr., and David filed a verified petition alleging that title to the property had been transferred to William through a series of deeds from Raymond, Sr.; those deeds were invalid because Raymond, Sr., had resigned as a trustee of the Family Trust when the deeds were executed; and William did not pay any consideration for the property.  The petition requested double damages against William and Kelly under Probate Code section 859, but did not allege any specific amount of monetary damages, and requested an order invalidating two deeds of trust securing loans made to William and Kelly after they acquired title to the property.  The record shows that the petition was served on Howard by mail on December 29, 2006.

The initial hearing on the petition took place on February 8, 2007.  Appearances were made by William and Kelly and the two mortgage companies, Mortgage Capital Associates (MCA) and Service Plus Credit Union (SPCU) from which William and Kelly had obtained secured loans.  Howard did not appear.  The court continued the hearing to April 12 and set an April 5 deadline for filing objections.  The hearing was later continued to April 16.

---

**4** In their opening briefs, William and Howard state they are "using" reporter's and clerk's transcripts from case No. E048539.  While plaintiffs object to references to matters outside the designated record in the present case, they also note that the clerk preparing the record on appeal excluded certain items because they "'are located in prior record E048539,'" and "'it would duplicate the record.'"  Plaintiffs have therefore adopted the references to the record in case No. E048539, and to facilitate disposition of the issues on appeal, we will do likewise.

On April 6, 2007, William filed an objection to the petition. Howard did not file objections within the time allowed by the court.

**B. Motion for Change of Venue**

SPCU filed a motion for change of venue on the ground the action was for recovery of real property located in Riverside County. William asserts he joined that motion; however, the only citation to the record he provides to support that assertion is his opposition to plaintiffs' petition, in which he stated that the principal place of business of the Family Trust should be in Riverside County.

The hearing on the motion to change venue was conducted on April 16, 2007. William appeared through his then counsel, but his counsel did not speak during the motion; Howard did not appear. The trial court denied the motion without prejudice on the ground the petition dealt with the internal affairs of the Family Trust, and venue in San Bernardino County was therefore proper because other matters connected with the Family Trust were pending in that county.

When Howard appeared telephonically on April 29, 2009, at the hearing on her claim of right to possession, she stated, "Also, the court—I also—have this heard in the county I live in or reside in or the county I work in so I don't even know why it is [in] San Bernardino County." She stated she lived in Riverside County and worked in Los Angeles County.

**C. Discovery Matters**

On September 7, 2007, plaintiffs noticed William's and Kelly's depositions for October 9, after clearing the date with their counsel. At the request of William and

Kelly's counsel, the depositions were continued to November 7 and then to December 5. On November 13, substitution of counsel forms were filed indicating that the Mitchellweiler Law Corporation was no longer representing Kelly and William, and their new legal representative was the Walker Law Firm.

On December 3, 2007, the Walker Law Firm requested a third continuance of the depositions, and plaintiffs granted a continuance to February 11, 2008, a date suggested by the Walker Law Firm. However, on February 5, 2008, the Walker Law Firm gave notice that William had a medical appointment scheduled on February 11, and William and Kelly would not appear for their depositions on that date. Counsel stated he could not provide any new deposition dates within the next 30 days, and he did not provide requested proof of William's conflicting medical appointment.

At a status hearing on February 7, 2008, plaintiffs' counsel stated the matter had been continued while they were engaged in discovery. Counsel stated he had been trying unsuccessfully to take William's and Kelly's depositions since the previous September. Counsel for Raymond, Sr., then a conservatee, observed that he had made tentative appointments for William's and Kelly's depositions "at least five times," and each time the dates had been cancelled with only two or three days' notice.

On February 14, 2008, the Walker Law Firm filed a motion to be relieved as counsel. The declaration in support of the motion stated that "the attorney-client relationship deteriorated in that it [wa]s no longer feasible" for the law firm to continue representation and that William and Kelly had refused to cooperate with their counsel or follow counsel's advice on a material matter and had refused to return phone calls.

6

On February 14, 2008, plaintiffs moved to compel depositions and requested sanctions. On April 3, the trial court held a hearing on the motion to compel, as well as on the Walker Law Firm's motion to be relieved. William and Kelly did not attend, but attorney Tracy Miller, who appeared as a "friend of the court" represented that William was unable to appear; he had "temporary disabilities," and she had letters from his treating doctors. She said William and Kelly did not oppose the motion for withdrawal of the Walker Law Firm, but they wanted a continuance of the motion to compel so they could retain counsel to oppose it. She further stated that a hearing had been set for April 22 in connection with conservatorship matters, and that William "from all indications, physically, he'll be able to be present on that date . . . ." She represented that William was "working on retaining counsel" and was "planning on his health being to a point where he can appear on the 22nd, and it is his plan to have counsel at that time." The trial court granted the Walker Law Firm's motion to withdraw and granted plaintiffs' motion to compel depositions. The court ordered William's and Kelly's depositions for May 21, 2008, and imposed monetary sanctions of $1,690 on William and Kelly.

On May 20, 2008, counsel for plaintiffs left messages for William and Kelly reminding them of their depositions. William and Kelly responded by fax that they would not attend because they had not obtained new counsel. The next day, they failed to appear for their depositions. On May 22, plaintiffs filed a motion for terminating sanctions or evidentiary sanctions.

7

On May 28, 2008, William and Kelly filed an appeal from the order compelling their depositions. (Case No. E046041.) On June 6, they filed an opposition to plaintiffs' motion for sanctions on the ground their appeal was pending, and the trial court therefore lacked jurisdiction. They also argued that their conduct had not been willful. In support of their opposition, they provided a letter from Dr. Jeffrey A. Hirsch dated March 28, 2008,[5] and a letter from Dr. Vera David dated February 11, 2008.[6]

The motion for terminating or evidentiary sanctions came on for hearing on June 19, 2008, and William requested a continuance until after August 1 so he could retain counsel. Plaintiffs' counsel stated that counsel for Raymond, Sr., had set depositions for William and Kelly on July 9. He continued, "We tend to put these things on our calendar on a regular basis and then they don't show up. If they are not going to show up for this upcoming deposition, could he please state it for now so we don't put it in our records if they blow it off again." William replied, "No, we will not be able to show up." The court continued the hearing to August 7. Meanwhile, on July 31, this

---

[5] The letter stated: "Mr. Horspool has been my patient since July 12, 2005. He currently has severe and partially debilitating back pain. He has untreated sleep apnea (demonstrated by an overnight sleep study); we have not been able to obtain authorization from his insurance carrier to provide CPAP devise. He also has recurrent chest pain and shortness of breath that have defined precise explanation at the present time. [¶] As such, I believe it is impossible for Mr. Horspool to answer questions in a legal setting, such as a hearing or in deposition. Recognizing his usage of narcotic and benzodiazepine medications (and recognizing the medical problems referenced above) Mr. Horspool cannot withstand the stress of legal testimony of this nature."

[6] The letter stated in full, "I am writing this note to inform you that I saw Mr. Horspool in my office today for his regular scheduled appointment. [¶] Thank you for your attention in this matter. If you have any further questions, please do not hesitate to contact me."

8

court dismissed the appeal of William and Kelly in case No. E046041 on the ground that an order compelling a deposition is not appealable.

At the August 7, 2008, continued hearing on the motion for sanctions, William appeared without counsel and requested another continuance. The court continued the matter to September 29. Meanwhile, on August 13, William and Kelly filed a motion for reconsideration of the order dismissing the appeal. This court denied the motion on August 19. On September 10, William and Kelly filed a petition for review of this court's order in Case No. E046041 in the Supreme Court.

At the continued hearing on the motion for sanctions on September 29, 2008, Kelly did not attend; William appeared in propria persona. The trial court observed that "depositions had been scheduled . . . in September, October, then, October continued to November, and November into December, December into February, and . . . that all of these have not been attended to by [William], and it certainly seems to the court . . . that there has just been—not wanting to comply with the court's orders with respect to discovery, this discovery process, which is essential to moving this case forward." The trial court asked William if he would comply with an order for him and Kelly to be deposed. William responded that he was willing to comply before, but his counsel had withdrawn. He stated that his counsel had not informed him of the times set for the previous depositions, and he had been medically unable to have his deposition taken. The court asked him again if he would comply, and he responded, "Sure. I don't have any problem with that. But—and the other problem was, before I was going to go in and

9

have a deposition taken, I needed to go in with counsel, and I had not been given any amount of time to have counsel prior to that deposition."

The exchange continued:

"THE COURT: Well, we've gone through the counsel issues several times, and I'm thinking if you have counsel, fantastic. If you don't have counsel, that's the way it goes. That's pretty much the way I look at it at this point in time. [¶] I'd like to see if right now if there would be a date that we could select as a date for a deposition of you and your wife. And since I have all counsel here right now, could you look at your respective calendars and see if we can select a date?

"[William]: I'm unable to do that at this time.

"THE COURT: You're not going—

"[William]: I still have medical issues, and my wife now has medical issues and I do not think in her current condition that she will be able to handle the stress of a deposition."

Counsel for Raymond, Sr., agreed that if William and Kelly would not appear to be deposed, "then taking the default against [them] would seem the reasonable thing to do at this point in time because that's the only thing that protects my client who's the beneficiary."

After further discussion, William stated, "No. I didn't say I wouldn't [comply with the order for depositions]. I said I cannot give you a deposition at this time, your Honor. I'm having a very difficult time right now just talking with you." The court responded: "[I]t seems to me that based upon everything that I know about this case, that

10

what you said to me today is a clear indication of just a willful violation of the court order." William responded, "No. I'm willing to comply, your Honor. I'm willing to comply." The court stated: "Not even a close call. So I'm going to take the only real action that has any meaningful effect and I will grant the terminating sanctions and order that the responsive declarations and responsive pleadings be stricken, and the matter can proceed by default as to William and Kelly Horspool."

On October 16, 2008, the Supreme Court denied the petition for review of William and Kelly. (Case No. E046041.) On October 21, 2008, this court issued the remittitur in that case.

On November 7, 2008, William and Kelly appealed the order imposing terminating sanctions. (Case No. E047160.) On January 14, 2009, this court dismissed the appeal on the ground the order could be reviewed only after final judgment or by writ petition. Meanwhile, William and Kelly obtained new counsel, Daun DeVore.

## D. Prejudgment Writ of Possession

On January 22, 2009, plaintiffs applied ex parte for an order for issuance of a prejudgment writ of possession on the property on the grounds that William and Kelly were in default. The hearing was continued until March 24. William and Kelly did not file an opposition to the application. The trial court granted the application, and a writ of possession was issued.

William filed an appeal from the order, and this court dismissed the appeal as abandoned. (Case No. E048252) On April 29, 2009, William filed a petition for writ of

mandate to overturn the orders for terminating sanctions and issuance of the writ of possession. This court denied the petition. (Case No. E048232.)

When the sheriff attempted to execute on the writ of possession, Howard, appearing in the case for the first time, filed a claim of right to possession under Code of Civil Procedure section 1174.3. Her claim indicated she had occupied the premises on the date the petition was filed and had continued to occupy the premises ever since. She stated her occupancy was based on an oral rental agreement with the landlord.

On April 16, 2009, William filed a declaration stating he had substituted DeVore out of the case. At the April 20 hearing on Howard's claim, William appeared in propria persona. The court conducted a further hearing on Howard's claim on April 29. After hearing the evidence, which included Howard's prior testimony in the conservatorship matter showing she lived in Los Angeles, the court determined she did not have a valid claim of possession.

Howard did not appeal the order denying her claim of right to possession.

Meanwhile, DeVore moved to be relieved as counsel for William and Kelly on the grounds of communication problems and "disagreement regarding how to proceed with certain decisions" regarding representation. William substituted himself in propria persona.

William filed an appeal from the order for issuance of the writ of possession. (Case No. E048539.) He later filed a petition for writ of mandate seeking to overturn the order. (Case No. E050097.) This court granted the petition in part, concluding that a

12

prejudgment writ of possession could be issued only with respect to personal property. Thus, the writ of possession was vacated.

### E.  Default Judgment

The trial court held a prove-up hearing as to the petition.  Plaintiffs presented live testimony and introduced exhibits.  Following the hearing, the trial court entered an order confirming that the Family Trust was the rightful owner of the property and entitled to its possession.  The trial court found that William and Kelly had acted in bad faith in obtaining title to, encumbering, and withholding possession of the property from the Family Trust, and the trial court awarded plaintiffs damages for the reasonable rental value of the property from June 12, 2009, in the amount of $53.33 per day, and doubled the damages under Probate Code section 859.

### F.  Postjudgment Writ of Possession

On May 10, 2010, the clerk issued a writ of possession.  On May 28, William filed an appeal from the default judgment.  After additional proceedings, the trial court ordered William and Kelly to file an undertaking in the amount of $46,000 and cure the default under the deed of trust against the property.  William and Kelly failed to appear at a June 21 review hearing and failed to file an undertaking or proof that the default had been cured, and the trial court lifted the stay of the writ of possession.  However, at the hearing, plaintiffs' counsel informed the trial court that Howard had filed a claim of right of possession.

A hearing was set for Howard's claim on June 28, 2010.  The trial court stated Howard had filed a challenge under Code of Civil Procedure section 170.1, and the

13

challenge needed to be answered before the hearing proceeding. The matter was assigned to another judge, who determined on July 21 that Judge Welch was not disqualified. Howard did not seek review of that order.

On July 28, 2010, the trial court set an August 4 hearing for Howard's claim. Her counsel requested and was granted another continuance to August 31. Meanwhile, Howard filed a motion to vacate the terminating sanctions order and subsequent default judgment on the grounds the orders were void. The court heard Howard's motion and claim of possession on August 31. After the court denied the motion to vacate, Howard's attorney filed another affidavit of disqualification under Code of Civil Procedure section 170.1. The trial court denied the affidavit and denied Howard's claim.

Additional facts are set forth in the discussion of the issues to which they pertain.

### III. DISCUSSION

#### A. Jurisdiction to Order Terminating Sanction

Both William and Howard contend the trial court lacked jurisdiction to order a terminating sanction because an appeal was pending when the trial court issued the order.

As a general rule, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from and upon the matters embraced in or affected by that judgment or order, including its enforcement. (Code Civ. Proc., § 916, subd. (a).) However, "'[N]o appeal can be taken except from an appealable order or judgment, as defined in the statutes and developed by the case law . . . .' [Citation.]" (*Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 666.) Thus, if a party appeals from a nonappealable order, the appeal is not perfected, and the trial court retains

14

jurisdiction. (*Ibid.*; see also *Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1409, fn. 4 and cases collected.)

Here, William appealed from an order compelling his deposition. This court dismissed the appeal because such an order is not appealable. (See *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432 ["There is no statutory provision for appeal from an order compelling compliance with a discovery order."].) Consequently, William's appeal was never perfected, and no stay under Code of Civil Procedure section 916, subdivision (a) ever took effect. We conclude the trial court had jurisdiction at the time it issued the terminating sanction order.

## B. Jurisdiction to Award Monetary Damages

Both William and Howard[7] contend the trial court exceeded its jurisdiction by awarding monetary damages when the petition did not specify any amount of damages.

### 1. Analysis

Code of Civil Procedure section 580, subdivision (a) provides: "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by [Code of Civil Procedure] Section 425.11, or in the statement provided for by [Code of Civil Procedure] Section 425.115; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue. The court may impose liability, regardless of whether the theory upon which liability is sought to be imposed involves legal or equitable

---

[7] Preliminarily, we note that Howard lacks standing to raise the issue because she is not personally aggrieved by it.

15

principles." (Code Civ. Proc., § 580, subd. (a).) The purpose of Code of Civil Procedure section 580 is to ensure that a defendant who defaults has adequate notice of the judgment that may be taken against him. (*Stein v. York* (2010) 181 Cal.App.4th 320, 325.) "A complaint that merely prays for damages according to proof without specifying any amount cannot satisfy [Code of Civil Procedure] section 580. [Citation.]" (*Id.* at p. 327.)

Except to the extent the Probate Code provides applicable rules, the rules of practice applicable to civil actions under the Code of Civil Procedure apply to and constitute the rules of practice in proceedings under the Probate Code. (Prob. Code, § 1000.)

Plaintiffs contend Code of Civil Procedure section 580 does not apply because (1) it refers to a complaint, and plaintiffs filed a petition under Probate Code section 850[8] instead of a complaint, and (2) Code of Civil Procedure sections 425.11 and 425.115 are inapplicable. However, Code of Civil Procedure section 580 is a "'statutory expression of the mandates of due process, which require 'formal notice of potential liability.' [Citations.]" (*Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1176.) The same fundamental due process considerations apply whether the suit is initiated by petition under Probate Code section 850 or by a complaint. Plaintiffs' petition failed to specify any amount of monetary damages, and William therefore had no

---

[8] Plaintiffs brought their petition under Probate Code section 850, which authorizes a trustee to file a petition for relief when the trustee "has a claim to real or personal property, title to or possession of which is held by another." (Prob. Code, § 850, subd. (a)(3)(B).)

notice of the amount of the judgment that might be entered against him.  We will therefore modify the judgment to strike the provision awarding money damages.

### C.  Motion for Change of Venue

William and Howard contend the trial court abused its discretion by denying the motion for change of venue.

#### 1.  Analysis

The denial of a motion for change of venue is not appealable; rather, such challenge must be brought through a petition for writ of mandate.  (Code Civ. Proc., § 400; see also *Calhoun v. Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39, 41-42.)  Code of Civil Procedure section 400 provides:  "When an order is made by the superior court granting or denying a motion to change the place of trial, the party aggrieved by the order may, within 20 days after service of a written notice of the order, petition the court of appeal for the district in which the court granting or denying the motion is situated for a writ of mandate requiring trial of the case in the proper court. . . ."  (Code Civ. Proc., § 400.)  A party that fails to seek appropriate and timely writ relief from a ruling on a change of venue motion loses the right to a review of the order on the merits.  (*Dunas v. Superior Court* (1970) 9 Cal.App.3d 236, 240.)

We note that it appears neither party brought a proper motion for change of venue. As recounted above, William never formally joined SCPU's motion, and Howard's oblique statement at the hearing on her claim of right of possession did not constitute such a motion.  Moreover, even assuming for purposes of argument that such a motion for change of venue was joined or brought, neither William nor Howard filed a petition

for writ of mandate to challenge the trial court's denial of such motion. They therefore have forfeited the right to raise that challenge in this appeal. (*Dunas v. Superior Court*, *supra*, 9 Cal.App.3d at p. 240.)

### D. Motions to Disqualify Judge

William and Howard contend the trial court exceeded its jurisdiction by failing to act in compliance with judicial canons and with Code of Civil Procedure sections 170.1 and 170.6.

#### 1. Additional Background

##### (a) Howard's first challenge

On April 16, 2009, Howard filed a motion under Code of Civil Procedure section 170.6 to disqualify Judge Welch. On April 20, she served the motion on Judge Welch. She asserted that she "cannot or believes that she cannot have a fair and impartial hearing" before Judge Welch. The court denied the motion.

On April 29, 2009, Howard filed a petition for writ of mandate as to the court's denial of her challenge under Code of Civil Procedure section 170.6. This court denied the petition the same day. (Case No. E048233.)

##### (b) Howard's second challenge

After the default judgment was entered, and on the day of the initial hearing on Howard's second claim of right to possession, she filed a peremptory challenge under Code of Civil Procedure section 170.1. Judge Welch filed a verified answer to the challenge stating he had no prejudice against Howard and had been and would continue to be impartial in the case. On July 21, an assigned judge filed an order denying the

challenge based on Howard's failure to prove facts justifying disqualification. Howard did not seek review of the denial through a writ petition.

### (c) Howard's third challenge

On August 31, 2010, the day of the continued hearing on her second claim of right to possession, Howard filed another challenge to Judge Welch under Code of Civil Procedure sections 170.1 and 170.3. She asserted the challenge was based on new evidence—purportedly perjured statements Judge Welch had made in his answer to her earlier challenge. Howard did not seek review of the denial of her challenge through a writ petition.

### (d) William's challenge

After his answer was stricken, William attempted on April 5, 2010, to file a challenge under Code of Civil Procedure section 170.1 at the default prove-up hearing. William alleged Judge Welch was disqualified because of "biased and a fixed opinion" against William based on prior rulings made against him. The trial court found that William had no standing to raise the issue because the terminating sanction had been entered.

Meanwhile, William obtained new counsel, Christopher Carter. Carter renewed the challenge at the hearing on the motion to tax costs. The trial court again denied the motion.

*2. Analysis*

(a)  Howard's challenge under Code of Civil Procedure section 170.6

Code of Civil Procedure section 170.6 permits a party to disqualify a judge for prejudice based on a sworn statement.  (*Barrett v. Superior Court* (1999) 77 Cal.App.4th 1, 4.)  If the party files a timely peremptory challenge motion in the proper form, the court must accept it without further inquiry.  (*Ibid.*)  However, if the judge has presided over a hearing, proceeding, or motion prior to trial that involved a determination of contested factual issues relating to the merits, a subsequent peremptory challenge motion is precluded as untimely.  (*People v. Richard* (1978) 85 Cal.App.3d 292, 299.)

By the time Howard raised her Code of Civil Procedure section 170.6 challenge to Judge Welch in April 2009, the court had already heard and ruled on discovery motions, had issued terminating sanctions, and had determined plaintiffs were entitled to possession of the property.  In short, the trial court had determined contested factual issues related to the merits, and Howard's section 170.6 challenge was therefore untimely.  (See *Stephens v. Superior Court* (2002) 96 Cal.App.4th 54, 60-64.)

(b)  William's and Howard's challenges under Code of Civil Procedure section 170.1

A determination on disqualification of a judge is not an appealable order; rather, such an order may be reviewed only by writ of mandate. (Code Civ. Proc., § 170.3, subd. (d).)  Neither William nor Howard filed petitions for writ of mandate as to the denials of their challenges to Judge Welch under Code of Civil Procedure section 170.1.  They

20

argue, however, that the issue is nonetheless reviewable on appeal when the judge making the order was not impartial, and the order violates a party's constitutional due process. William and Howard cite *People v. Mayfield* (1997) 14 Cal.4th 668, in support of their argument. That case states a defendant may assert on appeal a claim that he was denied a due process right to an impartial judge. (*Id.* at p. 811.) We therefore limit our review of the issue to addressing the potential constitutional challenge while concluding that any procedural deficiencies were forfeited by failure to bring a petition for writ of mandate.

William and Howard contend Judge Welch was not impartial because of an alleged relationship with David and his counsel, who had served as pro tem judges in his court. An independent judge in another county reviewed that allegation and determined it to be without merit, and we agree. Service as a pro tem judge does not create the type of relationship with a sitting judge that the disqualification statute contemplates as a basis for recusal.

William also contends partiality is shown by the trial court's rulings against him and the fact that this court reversed one ruling. With respect to this court's reversal of the trial court's ruling on the prejudgment writ of possession, we merely note the fact that the trial court committed legal error does not establish bias or create the appearance of bias. (See, e.g., *In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 153.) With respect to the trial court's rulings against them, many of which are challenged (and affirmed) in this appeal, we conclude those rulings were based on the lack of merit in William's positions

21

rather than on bias.  In short, William and Howard have failed to demonstrate any violation of constitutional due process within the meaning of *Mayfield*.

### E.  Remedy of Terminating Sanction

William contends the trial court abused its discretion in imposing a terminating sanction because such a remedy was "drastic and excessive" under the circumstances.

#### *1. Analysis*

"Failing to respond to an authorized method of discovery is a misuse of the discovery process.  ([Code Civ. Proc.,] § 2023.010, subd. (d).)  So is disobeying a court order to provide discovery.  (*Id*., subd. (g).)  If a party fails to obey an order compelling answers to special interrogatories and/or an order compelling a response to a demand for production of documents, the court may impose a terminating sanction by striking out the pleading of that party and/or rendering a judgment by default against that party.  ([Code Civ. Proc.,] §§ 2023.030, subd. (d)(1) & (3), 2030.290, subd. (c), 2031.300, subd. (c).)  [¶]  'The trial court should consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should "'attempt[] to tailor the sanction to the harm caused by the withheld discovery.'"  [Citation.]  The trial court cannot impose sanctions for misuse of the discovery process as a punishment.'  [Citation.]  '"Discovery sanctions 'should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.'"  [Citation.]  If a lesser sanction fails to curb abuse, a greater sanction is warranted:  continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will cure the abuse.  "A decision to order

22

terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with discovery rules, the trial court is justified in imposing the ultimate sanction."' [Citation.] [¶] 'Imposition of sanctions for misuse of discovery lies within the trial court's discretion, and is reviewed only for abuse.' [Citation.] 'Sanction orders are "subject to reversal only for arbitrary, capricious or whimsical action."' [Citation.]" (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1516-1517.)

William contends that "No accomodation [*sic*] was made for the severe medical condition and medication effects on [him] since 2005 or the fact that between October 2007 through July 2008 three of [his] attorney[s] withdrew from representation at the last moment and left [him] 'hanging' knowing that [he] had medical excuses from his doctors which effect [*sic*] his ability and his mental capacity to have his deposition taken," and that his attorneys failed to give him notice of the scheduled depositions or the order for deposition. The only evidence in the record that William has cited to support his argument of a medical condition was Dr. Hirsch's letter dated March 28, 2008. However, the letter did not provide a prognosis or estimate as to when William would be able to participate in a deposition; William did not provide any updated opinion before the September 29 hearing; and no medical evidence whatever was provided as to Kelly. Moreover, the successive withdrawals of William's attorneys were based on their declarations that William would not cooperate, accept professional advice, and/or return calls.

23

In short, as recounted above in detail in the statement of facts, William exhibited a chronic pattern of delay and evasiveness for nearly a year in responding to requests for his deposition. The fact that the trial court could have imposed a lesser sanction does not mean it was an abuse of discretion to impose the most severe terminating sanction. (*Electronic Funds Solutions, LLC v. Murphy*, *supra*, 134 Cal.App.4th at p. 1183.)

**F. Ownership of Trust Property**

William contends Raymond, Sr., retained all rights and powers of ownership over all the trust property.

That contention is not properly before us in this appeal. William's opportunity to raise the issue was in the trial court; however, he forfeited that opportunity by failing to comply with discovery orders, resulting in the terminating sanction and entry of default against him.

**G. Denial of Claims of Right to Possession**

Howard contends the trial court abused its discretion in acting on her claim of right of possession while an appeal from the prejudgment writ of possession was pending.

*1. First Claim*

After the trial court granted plaintiffs' application for prejudgment writ of possession, Howard appeared in the case for the first time on April 16, 2009, and filed a claim of right under Code of Civil Procedure section 1174.3, claiming a right to possession of the property. She declared under penalty of perjury that she had occupied the property on December 20, 2006, the date plaintiffs filed their petition; she "continued

to occupy the premises ever since," and her occupancy was based on an oral rental agreement with the landlord.

A hearing was held on her claim on April 20, 2009, at which Howard appeared by telephone. Howard was granted a continuance until April 29. On April 29, Howard again appeared by telephone. The court denied her request for a further continuance. After hearing plaintiffs' evidence, which included Howard's deposition testimony in a proceeding relating to Raymond, Sr.'s conservancy that she resided in Los Angeles, the court determined Howard did not have a valid claim of right to possession. Howard never appealed the order.

On December 31, 2009, William filed a petition for writ of mandate seeking to overturn the March 30, 2009, order for issuance of the writ of possession. This court granted the petition in part and vacated the writ of possession on the ground prejudgment writs of possession could be issued only with respect to personal property. (Case No. E050097.)

### 2. Second Claim

The prove-up hearing was held on April 5, 2010, following which the trial court entered an order determining plaintiffs' entitlement to title and possession of the property, invalidating the deeds by which William and Kelly had purportedly obtained title, and requiring them to surrender possession of the property. The court also awarded double damages in the amount of $31,678 for their wrongful occupancy of the property and court costs. On May 10, the clerk issued a writ of possession. On May 28, William appealed from the default judgment.

On June 21, 2010, Howard filed a claim of right to possession under section 1172.**9** On September 1, the trial court denied Howard's claim and ordered the sheriff to enforce the writ of possession.

### 3. Analysis

Howard contends the trial court lacked jurisdiction to deny her first claim because William had filed an appeal on April 14, 2009, from the prejudgment writ of possession. The issue is moot. The purpose of a claim under Code of Civil Procedure section 1174.3 is to prevent enforcement of a judgment of possession against an occupant having a claim of right who is not named in the judgment. (See Code Civ. Proc., § 1174.3, subd. (a).) The prejudgment writ of possession was stayed pending William's challenge to it by means of a petition for writ of mandate. This court determined that the prejudgment writ of possession was void, and we directed the trial court to vacate it. Consequently, the prejudgment writ of possession was never enforced.

Howard presents no argument as to how the trial court erred in denying her second claim. We therefore consider the issue forfeited.

---

**9** "On the trial of any proceeding for any forcible entry or forcible detainer, the plaintiff shall only be required to show, in addition to the forcible entry or forcible detainer complained of, that he was peaceably in the actual possession at the time of the forcible entry, or was entitled to the possession at the time of the forcible detainer. The defendant may show in his defense that he or his ancestors, or those whose interest in such premises he claims, have been in the quiet possession thereof for the space of one whole year together next before the commencement of the proceedings, and that his interest therein is not ended or determined; and such showing is a bar to the proceedings." (Code Civ. Proc., § 1172.)

26

**H.  Denial of Motion to Vacate Terminating Sanctions Order and Default Judgment**

Howard contends the trial court failed to apply the standard of Code of Civil Procedure section 473, subdivision (d) when ruling on her motion to vacate the default order.  Her argument is nothing more than a restatement of her contention, addressed above, that the trial court lacked jurisdiction to enter default because William's appeal from the deposition order was pending.  As discussed above, an appeal from a nonappealable order did not divest the trial court of jurisdiction to rule on the motion for terminating sanctions and on subsequent matters.

## IV.  DISPOSITION

The judgment is reversed to the extent it awards monetary damages.  In all other respects, the judgment and other orders appealed from are affirmed.  Parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                HOLLENHORST        
                              Acting P. J.

We concur:

    MCKINSTER      
              J.

    RICHLI         
              J.